UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-80056-Cr-ROSENBERG

UNITED STATES OF AMERICA,

Plaintiff,

vs.

JASSIEL CHAVEZ-VALENTE,

Defendant.
__________________________________/

**PLEA AGREEMENT**

The United States of America (hereinafter the "United States" or "this Office" and, JASSIEL CHAVEZ-VALENTE (hereinafter "the defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to Count 2 of the Indictment, which charges him with Possession with Intent to Distribute 500 Grams or More of a Mixture and Substance Containing a Detectable Amount of Methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(viii), and 846.

2. In return for the defendant's guilty plea to Count 2 of the Indictment, the United States agrees to move to dismiss Count 1 of the Indictment at time of sentencing.

3. The defendant is aware that his sentence will be imposed by the Court after considering the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines, which may include

"relevant conduct" under Section 1B1.3 of Sentencing Guidelines, and that the applicable guidelines will be determined by the Court relying in part on the results of a Pre-Sentence Investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose that sentence; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory sentence. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offenses identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

4. The United States agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will make a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted

authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. The United States, however, will not be required to make this motion and recommendation, if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official; (3) or attempts to withdraw his plea after a finding by the Court that such was knowingly and voluntarily made.

5. **MAXIMUM PENALTIES:**

(a) The defendant understands and acknowledges that the Court must impose a statutory mandatory minimum term of ten (10) years' imprisonment, and may impose a maximum term of life imprisonment, to be followed by a minimum term of five (5) years' supervised release, to a maximum life term of supervised release.[1] In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to ten million dollars ($10,000,000).

(b) **Immigration Consequences:** The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the

---

[1] *See United States v.Sanchez*, 269 F.3d 1250, 1287-88 (11th Cir. 2001)(Holding where statute does not otherwise specify a maximum sentence, maximum sentence is "life.")

defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Indeed, because defendant is pleading guilty to an offense involving drug trafficking, removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. Defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that the defendant's plea may entail, even if the consequence is the defendant's automatic removal from the United States. The defendant also understands and acknowledges that if he is removed or deported from the United States following his conviction in this case, it is a serious federal felony offense to thereafter reenter the United States without obtaining the prior express written permission of the United States Secretary of Homeland Security.

6. The defendant further understands and acknowledges that, in addition to any sentence imposed under the preceding paragraph of this agreement, a special assessment in the amount of $100.00 shall be imposed on the defendant for the count of conviction. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing. Payment may be either in the form of cashier's check or money order made payable to the Clerk of Court, Southern District of Florida, or in cash. It is the prosecuting AUSA's duty to ensure that the special assessment has been paid at the time of sentencing. If a defendant is financially unable to pay the special assessment,

the defendant should be required to present evidence to the United States and the Court as to the reasons for his failure to pay.

7. The Office of the United States Attorney for the Southern District of Florida (hereinafter "Office"), and the defendant, reserve the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

8. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the Court. The defendant understands further that any recommendation that the government makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

9. **ASSET FORFEITURE:** The defendant agrees, in an individual and any other capacity, to forfeit to the United States, voluntarily and immediately, any right, title, and interest to all property constituting or derived from proceeds he obtained, directly or indirectly, as a result of the violation(s) to which he agrees to plead guilty, and any property used, or intended to be used, in any manner or part, to commit or facilitate the commission of the violation(s).

10. The defendant further agrees that forfeiture is independent of any assessment, fine, cost, restitution, or penalty that may be imposed by the Court. The defendant knowingly and voluntarily agrees to waive all constitutional, legal, and equitable defenses to the forfeiture, including excessive fines under the Eighth Amendment to the United States Constitution. In addition, the defendant agrees to waive: any applicable time limits for administrative or judicial forfeiture proceedings, the requirements of Fed. R. Crim. P. 32.2 and 43(a), and any appeal of the forfeiture.

11. The defendant also agrees to fully and truthfully disclose the existence, nature and location of all assets in which the defendant has or had any direct or indirect financial interest or control, and any assets involved in the offense[s] of conviction. The defendant agrees to take all steps requested by the United States for the recovery and forfeiture of all assets identified by the United States as subject to forfeiture. This includes, but is not limited to, the timely delivery upon request of all necessary and appropriate documentation to deliver good and marketable title, consenting to all orders of forfeiture, and not contesting or impeding in any way with any criminal, civil or administrative forfeiture proceeding concerning the forfeiture.

12. This Plea Agreement constitutes the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 7/5/2023

By: ______________________
JOHN C. McMILLAN
ASSISTANT UNITED STATES ATTORNEY

Date: 6/26/23

By: ______________________
M. CAROLINE McCRAE
ASSISTANT FEDERAL PUBLIC DEFENDER
ATTORNEY FOR DEFENDANT

Date: 6/26/23

By: ______________________
JASSIEL CHAVEZ-VALENTE
DEFENDANT

Translated into Spanish by: Sean Logsdon
(Printed Name)

______________________
(Signature)

Or 6/26/23, 2023, at West Palm Beach, Florida

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-80056-Cr-ROSENBERG

UNITED STATES OF AMERICA,

Plaintiff,

vs.

JASSIEL CHAVEZ-VALENTE,

Defendant.
_______________________________/

**STIPULATED STATEMENT OF FACTS**

**A. Elements of Offense**

Were this matter to have proceeded to trial, the United States would have had to prove the following elements beyond a reasonable doubt as to Count 2 of the Indictment, which charges the defendant with Possession with Intent to Distribute 500 Grams or More of a Mixture and Substance Containing a Detectable Amount of Methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(viii), and 846:

(1) The defendant knowingly possessed a controlled substance;

(2) That the controlled substance in this case was 500 grams of more of a mixture and substance containing methamphetamine; and

(3) ~~(2)~~ The defendant intended to distribute the controlled substance.



To "intend to distribute" is to plan to deliver possession of a controlled substance to someone else, even if nothing of value is exchanged.

**B. Statement of Facts**

Had this matter proceeded to trial, the United States would prove the following

facts beyond a reasonable doubt, through admissible testimony and evidence, which the defendant agrees, by his signature below, are true and correct facts, and satisfy all the necessary elements of the offense of conviction referenced above and in paragraph 1 of the Plea Agreement:

1. In February 2023, at the direction of Task Force Officer (TFO) Christian Padilla of Homeland Security Investigations (HIS), a Cooperating Defendant (CD) initiated communications with a male believed to be an inmate of the Georgia State Prison, known to him as "Nino." Nino was known to the CD as a distributor of Methamphetamine, Fentanyl, Cocaine, and Heroin. The CD advised that NINO was in possession of a cellular device while incarcerated and he had the ability to make and receive phone calls, send/receive text messages, and use social media. The CD advised NINO could provide kilogram quantities of crystal methamphetamine for distribution in the Southern District of Florida.

2. According to the CD, on March 4, 2023, at 3:24 p.m., the CD initiated text communication with NINO, using his cellular telephone for the purpose of ordering multiple kilograms of methamphetamine. During the recorded conversation, NINO agreed to sell the CD five kilograms of methamphetamine for twenty thousand dollars in Palm Beach County on Thursday, March 23, 2023, at 2:00 PM.

3. On March 20, 2023, at approximately 2:02 p.m., the CD asked NINO via text message if he could phone increase his order to ten kilograms of methamphetamine. NINO advised that he could sell the CD seven kilograms.

4. On March 23, 2023, at 11:03 a.m., an HSI Undercover Agent (hereinafter

referred to as the "UC") acting in an undercover capacity as an employee of the CD, witnessed as the CD placed a recorded phone call to NINO at phone number 773-202-6211. After two unanswered attempts at 11:30 A.M., NINO called back from 773-202-6211. NINO directed the CD to go to a specific hotel located in Northern Palm Beach County, Southern District of Florida, and advised "I got my people waiting for you at the hotel." The CD requested a phone number from NINO to give to his driver (the UC) who was to pick up the methamphetamine. NINO advised the CD to just call him (NINO) when he is there. The CD advised NINO that he was going to let his guy know and call him back.

5. On March 23, 2023 at 11:32 a.m., the CD received a phone call from NINO at phone number 773-202-6211. NINO inquired from the CD as to whether he had the money ready. The CD advised NINO that he had given his guy (the UC) the money ($30,000). The CD advised NINO that is the reason he was asking for a phone number because his money transporter and subject who is picking up the delivery of Methamphetamine was in the area. NINO advised the CD to just give the UC his (Nino's) phone number. The CD advised NINO that he was going to give the UC, "NINO's" phone number for him to call.

6. On March 23, 2023, at 11:40 a.m., the UC posing as a drug trafficker placed a phone call to NINO at 773-202-6211. The UC, who is a native Spanish-speaking agent, spoke with NINO and asked NINO where to go. NINO directed the UC to the "Super 8" hotel. The UC inquired on which Super 8 Hotel as there are several in the area. NINO advised the UC he would send the UC the address (via SMS text message.)

NINO asked the UC how much he was bringing. The UC advised he has the $30,000 but wasn't sure how many (kilograms) NINO was bringing. NINO advised there were "7 pieces." The UC understood this to be terminology for 7 kilograms of Crystal Methamphetamine. The UC received an SMS text message from NINO that stated "757 US 1 north Palm beach, FL 33408, Estados Unidos."

7. Thereafter, in the course of a series of recorded text message and phone calls the UC advised NINO that the hotel NINO had chosen had a law enforcement presence and was not an ideal location. NINO initially advised that he did not believe there was law enforcement presence and advised that the area "was not risky, we are delinquents, we are narco-traffickers, we aren't idiots" (Spoken in Spanish.) After a brief discussion NINO agreed to go to the UC's location and requested an address. The UC requested NINO to bring the Crystal Methamphetamine to the "Red Roof Plus located at 2421 Metrocentre Blvd West Palm Beach FL 33407."

8. The UC along with the CD drove to the "Red Roof Plus" located at 2421 Metrocentre Blvd, in the City of West Palm Beach, Palm Beach County, Southern District of Florida. The UC had provided NINO with a description of his vehicle, along with a photograph. At approximately 12:55 p.m., the UC received a phone call from NINO (773-202-6211), where NINO asked what direction to go once he pulled into the parking lot. The UC directed him, to his location.

9. At approximately 12:58 p.m., the UC observed a green Mini Cooper, four-door vehicle arrive to the parking lot driven by a Hispanic Male later identified as Jassiel CHAVEZ-VALENTE, the defendant in this case. The UC observed the vehicle was also

occupied by a Hispanic female front passenger and two children in the rear of the vehicle. Defendant CHAVEZ-VALENTE parked his vehicle alongside the UC's vehicle, and exited the vehicle.

10. In an audio and video-recorded meeting, the UC greeted defendant CHAVEZ-VALENTE and defendant CHAVEZ-VALENTE asked the UC if he had the money. The UC affirmed it was nearby. Defendant CHAVEZ-VALENTE went to the trunk of the aforementioned Mini Cooper and retrieved a "Yeti" soft-sided cooler and opened it revealing a black garbage bag. The UC asked if the kilograms were visible. Defendant CHAVEZ-VALENTE advised they were not visible. The UC requested to see one kilogram and defendant CHAVEZ-VALENTE cut into the bags, and cardboard within the bag revealing a semi-transparent crystalline material that the UC recognized based on his training and experience to be crystal methamphetamine. The UC asked if there were 7 whole ones. To which defendant CHAVEZ-VALENTE responded in the affirmative.

11. At that point the UC gave a predetermined take-down signal at which point defendant CHAVEZ-VALENTE and the additional occupants of the vehicle were all taken into custody without incident. Agents then retrieved the yeti cooler which contained seven bags containing crystal methamphetamine.

12. The crystal methamphetamine delivered by defendant CHAVEZ-VALENTE was field-tested positive for the presence of methamphetamine and had a total weight of approximately 7 kilograms. Trina T. Do, a Forensic Chemist at the Drug Enforcement Administration's Southeast Regional Laboratory, would testify that based on her

subsequent analysis, the aforementioned substance delivered by defendant CHAVES-VALENTE to the UC on March 23, 2023, consisted of 6,952.5 grams of a mixture and substance containing methamphetamine, a Schedule II controlled substance.

13. Defendant CHAVEZ-VALENTE was transported to the HIS West Palm Beach Field Office, where defendant CHAVEZ-VALENTE was interviewed in Spanish by a native Spanish-speaking agent. In an audio/video recorded interview, agents read defendant CHAVEZ-VALENTE his constitutional *Miranda* warnings in Spanish from an HSI *Miranda* rights waiver form, and defendant CHAVEZ-VALENTE acknowledged that he understood his rights and agreed to speak with agents. Post-*Miranda*, defendant CHAVEZ-VALENTE explained that he was in contact with a subject known to him as "Lluvia C" who coordinated the delivery of the controlled substance to defendant CHAVEZ-VALENTE's home in Georgia. "Lluvia C" directed defendant CHAVEZ-VALENTE to drive to Palm Beach County, Florida, to deliver the controlled substance. Upon his arrival to Palm Beach County, on March 22, 2023, "Lluvia C" notified defendant CHAVEZ-VALENTE that the product defendant CHAVEZ-VALENTE was transporting was 7 kilograms of crystal methamphetamine. Defendant CHAVEZ-VALENTE advised he was going to be paid by "Lluvia C" $500 per kilogram of crystal methamphetamine he delivered. Defendant CHAVEZ-VALENTE admitted to delivering the methamphetamine and understood that crystal methamphetamine was illegal both in the United States and abroad. Defendant CHAVEZ-VALENTE stated he never communicated directly with the

CD or UC prior to arriving at the location of the transaction, but had received his instructions solely from "Lluvia C."

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

BY: ______________________
JOHN C. McMILLAN
ASSISTANT UNITED STATES ATTORNEY

SEEN, AGREED AND APPROVED:

______________________
JASSIEL CHAVEZ-VALENTE
DEFENDANT

______________________
M. CAROLINE McCRAE
ASSISTANT FEDERAL PUBLIC DEFENDER
ATTORNEY FOR DEFENDANT

Dated: 6/26/2023

Translated into Spanish by: SEAN LOGSDON
(Printed Name)

______________________
(Signature)

On 6/26/2023, 2023, at West Palm Beach, Florida